BETTY CROTTS FAGAN v. ARTHUR S. HAZZARD

No. 7618SC65

(Filed 16 June 1976)

1. Judgments § 24; Pleadings § 9— failure to file timely answer — no excusable neglect

The court's determination that defendant's failure to file a timely answer was not the result of excusable neglect was supported by the record where the court found upon supporting evidence that, although defendant had lost the tip of a finger in a work-related accident, he had returned to work and was able to function both mentally and physically to an extent sufficient to attend to his ordinary business affairs at the time the summons and complaint were served, and that the summons and complaint were left with defendant's wife at his residence by the sheriff who found her to be a person of suitable age and discretion. G.S. 1A-1, Rule 6(b).

2. Rules of Civil Procedure § 55— notice of application for judgment

The notice provisions of G.S. 1A-1, Rule 55(b), were inapplicable where no entry of default or judgment by default was sought or entered.

3. Trover and Conversion § 2; Rules of Civil Procedure § 8— action for conversion — absence of timely answer — trial on issue of damages

Where defendant did not timely file an answer, allegations of the complaint with respect to defendant's conversion of piano parts were admitted, plaintiff was entitled to judgment for the conversion of the parts provided she was able to show that the parts had some value, and only the issue of actual and punitive damages remained to be tried. G.S. 1A-1, Rule 8(d).

4. Jury § 1— waiver of right to jury trial — absence of timely answer or request

Defendant waived his right to a jury trial on the issue of damages by failing timely to file an answer and timely to make a demand for a jury trial on the issue of damages.

5. Trover and Conversion § 2— conversion — measure of damages

The measure of damages for wrongful conversion is the fair market value of the chattel at the time and place of conversion.

6. Trover and Conversion § 2— damages for conversion — insufficiency of findings

The trial court erred in awarding $950.00 actual damages and $1900.00 punitive damages for conversion of the player portion of a piano where the court failed to resolve the conflict in evidence as to the value of the player mechanism by making appropriate findings of fact as to its value.

APPEAL by defendant from *Albright, Judge.* Judgment entered 28 October 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 7 May 1976.

This is a civil action wherein plaintiff, Betty Crotts Fagan, seeks to recover both actual and exemplary damages from the defendant, Arthur S. Hazzard, because of defendant's alleged conversion of the player portion of a Gulbransen player piano.

In her complaint, plaintiff alleged in pertinent part the following:

Plaintiff was the owner of an antique Gulbransen player piano which had a fair market value of $2,000.00. In March 1973, she engaged the defendant to repair the mechanical player portion of the piano. The defendant removed the parts to the player mechanism and took them to his shop for repair. Over a year later, plaintiff requested that defendant either repair or return the parts. This request was made several times over the following year until finally, on 11 May 1975, defendant delivered some parts to the plaintiff. The parts delivered, however, were not the same parts defendant had taken, and they were "totally unserviceable in plaintiff's player piano." Plaintiff has made repeated demands for the return of the parts which defendant took from her, "but defendant has willfully failed and refused to return same."

"The parts which defendant has failed to return have a fair-market value of approximately $1,800.00; and the subject piano is rendered totally worthless without said parts. Plaintiff therefore alleges that she has been damaged in the sum of at least $2,000.00 by reason of defendant's wrongful conversion of said piano parts.

The defendant's conversion of said parts was wilful, wanton and malicious; and plaintiff alleges that she is therefore entitled to recover punitive damages of $5,000.00 from the defendant."

The complaint and summons were served on the defendant on 24 June 1975. On 12 August 1975, the defendant without obtaining leave of court, filed an answer and counterclaim. The plaintiff moved to strike the answer and counterclaim. On 29 August 1975, in response to plaintiff's motion to strike the answer and counterclaim, the defendant filed a verified motion to be allowed to leave to file his answer and counterclaim.

In his motion, defendant stated that he had lost a finger in a work-related accident in April 1975. As a result of the accident, he had been disabled and unable to see to his business and legal affairs. The complaint had been served on a third person and was not shown to defendant until a few days before defendant's answer was filed. When he received actual notice of the complaint, he exercised proper diligence in preparing and filing an answer.

On 24 September 1975, after a hearing, the court found the following pertinent facts.

Defendant lost the tip of his middle finger in a work-related accident. The physician who treated defendant certified to the North Carolina Industrial Commission that any disability resulting from the accident ended on 2 June 1975. Since 2 June the defendant had engaged in the duties of his occupation and "was able to function both mentally and physically to an extent sufficient to attend to the ordinary affairs of his business." The complaint and summons were left with his wife at his residence by the sheriff who found her to be "a person of suitable age and discretion and who resided in defendant's dwelling house." Based upon the findings, the court concluded that "[n]o excusable neglect [had] been shown" by the defendant in failing to timely file answer to the complaint and entered an order striking the answer and counterclaim and denying defendant's motion for leave to file an answer and counterclaim.

On 27 October 1975, the matter came on for trial on the issue of actual and punitive damages and both plaintiff and defendant appeared and offered evidence.

Plaintiff's evidence tended to show the following:

In January or February 1973, plaintiff purchased a Gulbransen player piano for $150.00. The piano was in excellent condition except for the player mechanism which did not work. She called the defendant who inspected the broken player portion of the piano in March 1973 and stated to plaintiff that he thought it could be fixed. He removed the "tubing works and the player portion of the piano" and carried them to his shop to work on them. Plaintiff told him there was no hurry to fix the piano.

Plaintiff called defendant about six months later but he had not begun working on it. She called him a year later and

Fagan v. Hazzard

he still had not begun repairing the parts. She called several more times, then finally called telling defendant to get the parts together so she could pick them up. On 11 May 1975 she went to his house to pick up the parts but some of them were missing. One of the parts which defendant gave her was not the same one he had taken from the piano. When plaintiff inquired where the rest of the parts to her piano were, the defendant replied that they "must have been the ones he sent to the American Piano Company and that they had thrown the parts away." Plaintiff called American Piano Company, and they told her that defendant had not done any business with them since 1972.

When the defendant removed the player mechanism from the piano, the rubber tubing appeared to plaintiff to be almost new. Norman Easter, who sold the piano to plaintiff, had replaced the tubing to the player mechanism with rubber tubing purchased from an automotive parts store. During the seven years he owned it, the player portion had never worked; but he used to get it to play by hooking a vacuum cleaner to the bellows.

Plaintiff's opinion as to the value of the piano with the broken player portion was at least $1,000.00 and without the broken player portion about $50.00. A working replacement for the player mechanism costs $1,600.00.

Harrison A. Munns testified for plaintiff as an expert witness in the field of piano and player piano rebuilding and repair. Although he had not seen plaintiff's piano or the player mechanism, in his opinion, the player portion of a Gulbransen piano could be repaired at a cost of about $450.00 to $550.00. He had repaired one Gulbransen piano in the past but could not remember when.

The defendant offered evidence tending to show the following:

Defendant repairs and rebuilds player pianos as a hobby. He has worked on three Gulbransens in an attempt to repair them because he had always been told they could not be repaired, and he considered it a challenge to try. He has never successfully repaired one. Defendant agreed to attempt to repair plaintiff's piano but told her when he removed the player part that he might not be able to repair it. They agreed at the time that

defendant could destroy the player part if he could not fix it since plaintiff was primarily interested in having a piano she could learn to play manually.

Defendant attempted to repair the player part but could not. He inquired of several different companies as to the possibility of repairing the player part and even mailed a small piece of it to American Piano Company to see if they could fix it. Finally, he gave up and around Christmas of 1974, when cleaning out his work shop, he burned most of the parts from plaintiff's piano. Two weeks later, plaintiff called and he informed her that he had not been able to fix the piano and had burned most of the parts. Plaintiff called several more times demanding the return of her piano parts. He told her each time that he had destroyed them, but he did agree to try to find a replacement. Finally, she picked up all that he had been able to collect. Subsequently, defendant found another piano for $100.00 and offered to buy it for plaintiff, but she refused to take it "because she did not know what would become of the lawsuit."

Ralph Starling, whose business for the past ten years was rebuilding and repairing player pianos, testified as an expert witness for the defendant. The defendant had come to him three times with plaintiff's player mechanism and had consulted with him to try to find a way to repair it. In his opinion, the player portion of a Gulbransen piano could not be repaired. During the time he had been working on player pianos, he had acquired Gulbransens. When he got one, he took the player portion out and threw it away. He had a stack of them sitting outside behind his business. In his opinion, the value of a Gulbransen player part was "not one nickel."

After hearing the evidence the court made a finding and conclusion that "[p]laintiff has been damaged in the amount of $950.00 by reason of defendant's wrongful conversion of plaintiff's piano parts . . . . " The court further concluded that plaintiff was entitled to recover $1,900.00 exemplary damages. From a judgment that plaintiff have and recover $2,850.00, defendant appealed.

*Schoch, Schoch, Schoch and Schoch by Arch Schoch, Jr., for plaintiff appellee.*

*Stephen E. Lawing for defendant appellant.*

Fagan v. Hazzard

HEDRICK, Judge.

By exceptions one, two, and three, defendant contends the court erred "in refusing as a matter of law to set aside entry of default and allow filing of answer on the grounds that no excusable neglect has been shown."

[1] First, we point out that there was no "entry of default" nor was there a default judgment under G.S. 1A-1, Rule 55(b). The record discloses that the defendant filed his answer and counterclaim more than thirty days after summons and complaint had been properly served as provided by G.S. 1A-1, Rule 4, without having obtained leave to do so. G.S. 1A-1, Rule 6(b) in pertinent part provides:

"When by these rules . . . an act is required or allowed to be done at or within a specified time * * * [u]pon motion made after the expiration of the specified period, the judge may permit the act to be done where the failure to act was the result of excusable neglect. * * * *"

While the defendant undertook to show excusable neglect in his failure to timely file the answer, the court's finding and conclusion that there had not been a showing of excusable neglect is supported by the record.

[2] Citing G.S. 1A-1, Rule 55(b), defendant contends that Judge Albright "erred in rendering judgment by default against the defendant when no written notice of application for judgment was served upon the defendant at any time prior to the hearing on such application." We do not agree. Rule 55 has no application here since as pointed out before, no entry of default or judgment by default was ever sought or entered on this case. See *Whitaker v. Whitaker*, 16 N.C. App. 432, 192 S.E. 2d 80 (1972).

[3, 4] Defendant contends the court erred in not granting him a trial by jury. This contention appears to be based on an exception to the judgment. Such an exception raises the question of whether the facts found or admitted support the conclusions of law and whether the judgment is in proper form. On 15 August 1975, the defendant made a demand for a trial by jury, but the record does not indicate that the court ever ruled on the demand. Since the court obviously undertook to determine the issue of damages without a jury, we consider the defendant's

contention, even though it is not, in our opinion, properly raised. G.S. 1A-1, Rule 8 (d) provides:

> *"Effect of Failure to Deny.* Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

Since the defendant did not timely file an answer, the averments of the complaint with respect to the defendant's conversion of the piano parts were admitted; and the plaintiff was entitled to judgment for the conversion of the property provided she was able to show that the property converted had some value. The issue of damages, actual and exemplary, remained to be tried. By failing to timely file an answer, and timely make a demand for a jury trial on the issue of damages, the defendant waived his right to have the jury determine the issue of damages. G.S. 1A-1, Rule 38 (d).

[5] Defendant contends the evidence and findings of fact do not support the conclusion that plaintiff is entitled to recover actual damages in the amount of $950.00 and exemplary damages in the amount of $1,900.00. The measure of damages for a wrongful conversion is the fair market value of the chattel at the time and place of conversion. *Crouch v. Trucking Company,* 262 N.C. 85, 136 S.E. 2d 246 (1964); *Seymour v. Sales Co.,* 257 N.C. 603, 127 S.E. 2d 265 (1962); *Peed v. Burleson's Inc.,* 244 N.C. 437, 94 S.E. 2d 351 (1956). The court made no findings regarding the fair market value of the player portion of the piano converted by the defendant. The finding by the court that plaintiff had suffered actual damages in the amount of $950.00 is really a conclusion and is not supported by appropriate findings of fact.

The description of the property converted is meager. Plaintiff gave her opinion as to the fair market value of the *piano* before and after the player portion was removed by the defendant for the purpose of being repaired. Plaintiff's description of the part converted by the defendant was merely that it did not function and that some of the tubing looked brand new. However, the man from whom plaintiff purchased the piano for $150.00 testified that the player portion had never worked during the seven years he owned it and that he had replaced

**Fagan v. Hazzard**

some of the tubing himself with material he had purchased at an automotive parts store. The two experts, Mr. Munns who testified for plaintiff and Mr. Starling who testified for defendant, were in disagreement as to whether the player portion of a Gulbransen piano could be repaired. Mr. Munns testified in general about Gulbransen player pianos but he had not even seen plaintiff's piano or any part thereof. Mr. Starling testified that the player portion of Gulbransen pianos could not be repaired, and he testified that the defendant brought parts of plaintiff's piano to him for consultation. Mr. Starling provided the court with the only direct evidence as to the value of the player portion of the piano allegedly converted by defendant. With respect thereto he testified "the value of the player part of a Gulbransen piano is not one nickel."

[6] The conflict in the evidence with respect to the value of the player portion of the piano should have been resolved by appropriate findings of fact. Because the court failed to make findings of fact as to the value of the property converted by the defendant, the judgment awarding actual damages in the amount of $950.00 must be vacated. Likewise the judgment awarding exemplary damages in the amount of $1,900.00 must be vacated since " '[p]unitive damages may not be awarded unless otherwise a cause of action exists and at least nominal damages are recoverable by the plaintiff.' *Worthy v. Knight,* 210. N.C. 498, 187 S.E. 771." *Clemmons v. Insurance Co.,* 274 N.C. 416, 424-25, 163 S.E. 2d 761, 766 (1968).

The result is: The order dated 24 September 1975 striking defendant's answer and counterclaim and denying defendant's motion to be allowed to file an answer and counterclaim is affirmed; that portion of the judgment entered 28 October 1975 declaring that the only issue for trial is that of actual and exemplary damages is affirmed. G.S. 1A-1, Rule 8 (d). That portion of the judgment entered 28 October declaring that plaintiff is entitled to recover $950.00 actual damages and $1,900.00 exemplary damages is vacated and the cause is remanded to the superior court for a new trial on the issue of actual and punitive damages.

Affirmed in part; Vacated and remanded in part.

Chief Judge BROCK and Judge CLARK concur.