PIEDMONT AVIATION, INC., DELTA AIR LINES, INC., EASTERN AIR LINES, INC., UNITED AIR LINES, INC., PETITIONERS V. RALEIGH-DURHAM AIRPORT AUTHORITY, RESPONDENT

No. 21

(Filed 26 June 1975)

1. **Municipal Corporations § 5— airport — proprietary function**

A municipality operating an airport acts in a proprietary capacity.

2. **Aviation § 1; Municipal Corporations § 5— airport authority — determination of fees — proprietary function**

In determining the fee it will charge for the privilege of landing an aircraft upon its runway and the rent it will charge for the use of its properties, a municipal airport authority acts as the proprietor of the property, not as a regulatory agency.

3. **Municipal Corporations § 5— determination of water rates — proprietary function — prior decision no longer authoritative**

The statement in *Candler v. Asheville,* 247 N.C. 398, to the effect that a municipality in establishing rates it will charge for water is exercising a governmental function is no longer authoritative.

4. **Aviation § 1— airport authority — managing board — determination of landing fees and rentals**

The managing board of a municipal airport authority, in determining landing fees and rentals it will charge the users of its facilities, acts as does the board of directors of a private corporation owning and operating a like facility, subject only to limitations imposed on it by statute or by contractual obligations assumed by it.

5. **Aviation § 1— airport authority — determination of landing fees and rentals — hearing and notice not required**

The Raleigh-Durham Airport Authority is not required by statute to conduct a hearing, receive evidence and make findings of fact or to follow any other procedural course in determining the landing fees or rentals to be charged by it, nor is the Authority required to give notice to present or prospective users of its properties that it is contemplating a change in such fees and rental charges.

Aviation, Inc. v. Airport Authority

6. **Administrative Law § 5; Aviation § 1— airport authority — fixing of fees — no administrative decision — judicial review**

　　The fixing by the Raleigh-Durham Airport Authority of the fees it will charge for the use of its properties is not an "administrative decision" within the meaning of G.S. Ch. 143, Art. 33, and the procedure provided by that Article for obtaining judicial review of "administrative decisions" is not applicable thereto.

　　APPEAL by respondent, Raleigh-Durham Airport Authority, from *Bailey, J.*, at the 14 October 1974 Session of WAKE, heard prior to determination by the Court of Appeals.

　　The petitioning airlines, each a common carrier operating regularly scheduled flights in which it uses the facilities of the Raleigh-Durham Airport for landings and departures, complain of the action of the Airport Authority (hereinafter called the Authority) increasing landing fees and space rental charges previously in effect at the airport. By their joint petition to the Superior Court of Wake County, they pray the court to stay the effectiveness of the new rates pending the outcome of this proceeding and to set "a reasonable and adequate landing fee and space rental charge" or, alternatively, to declare the rates so fixed by the Authority "null and void." In summary, the petition alleges:

　　The Authority is an agency within the meaning of G.S. 143-306(1) and is subject to the provisions of G.S. Ch. 143, Art. 33, entitled "Judicial Review of Decisions of Certain Administrative Agencies." On 21 June 1973, the petitioners were notified by the Authority of an increase in the landing fees and in the space rental charges, effective 1 October 1973. The increased landing fee, applicable to the petitioners, is 262 per cent of that previously charged. No data purporting to justify such increase in the landing fee were submitted by the Authority to the petitioners until after the Authority acted. The Authority has never made a computation supporting the increase in the space rental charge. The increases, both in the landing fees and in the space rental charges, are unlawful because:

　　(1) They exceed the "reasonable and adequate" fees and charges which the Authority is permitted by statute to charge; (2) they exceed the amount which the "petitioners are contractually obligated to pay pursuant to a tenancy from year to year arising upon the expiration of the Airport-Airline Lease and Use Agreement, dated August 1, 1967"; (3) they were determined upon "without a meeting of the Authority and without

providing the petitioners a fair opportunity to be heard; (4) they are unsupported by competent, material and substantial evidence, are arbitrary and capricious, and constitute a denial of due process of law and equal protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution, and under Article I, § 19, of the North Carolina Constitution"; and (5) the "statutory power of the Authority to set landing fees, and space rental charges contained in Chapter 168, § 7, of the 1939 Session Laws of North Carolina, as amended, is unconstitutional for the reasons that (i) it represents an unlawful delegation of legislative authority under Article II, § 1, of the North Carolina Constitution; and (ii) it is a local or special act regulating trade and is, therefore, violative of Article II, § 24, of the North Carolina Constitution."

The petitioners further allege they have exhausted all administrative remedies available to them by statute or agency rule and "are entitled to judicial review of such decision under the provisions of Article 33 of Chapter 143 of the General Statutes of North Carolina."

The respondent Authority moved to dismiss the petition for review on the ground that its action in establishing the fees and charges in question is not subject to the provisions of G.S. Ch. 143, Art. 33, for the reasons that: (a) The Authority is not "a State administrative agency," (b) its action in fixing the fees and charges in question is not an "administrative decision," and (c) there is no "statute, regulation, rule or other provision" requiring the Authority to follow any established administrative procedure in fixing such fees and charges.

The Superior Court concluded that it had jurisdiction; that the respondent is an "administrative agency" as defined in G.S. 143-306(1); that the determination of the Authority with respect to the establishment of the landing fees in dispute was an "administrative decision" as defined in G.S. 143-306(2) and the petitioners' legal rights, duties and privileges were required by constitutional right to be determined after an opportunity for an agency hearing; and that the petitioners are entitled to a judicial review of such determination pursuant to G.S. Ch. 143, Art. 33. The court, therefore, denied the motion to dismiss the petition. From this denial the respondent Authority appealed.

At the hearing in the Superior Court, the following facts (summarized except as otherwise indicated) were stipulated:

The Authority "owns and operates the Raleigh-Durham Airport." Its facilities are used by scheduled air carriers, non-scheduled air carriers, military aircraft and general aviation aircraft. The four petitioners are the only "scheduled air carriers" using the airport. The nonscheduled air carriers are "essentially 'charter' flights by commercial airlines." "General aviation aircraft" are privately owned. Two flying service companies, located at the airport, transport passengers for hire on short trips. A consulting firm employed by the Authority projected that, "during calendar year 1974," 93,577 landings would occur at the airport, of which 20.1 per cent by number and 77.6 per cent by weight would be by scheduled air carriers, 0.8 per cent by number and 3 per cent by weight would be by nonscheduled air carriers, 7.5 per cent by number and 1.8 per cent by weight would be by military aircraft and 71.6 per cent by number and 17.6 per cent by weight would be by "general aviation" aircraft. "The rates charged users of the Raleigh-Durham Airport facilities other than the scheduled air carriers were different in amount and determined in a manner different from the rates charged the scheduled airliners." The increases in the fees and charges were agreed upon by members of the Authority in telephone conversations without a formal meeting, following which agreement there was concurrence therein at a meeting of the Authority. "The petitioners were not given prior notice of the Authority's intention to set such rates * * * and the airliners have never been given a hearing, nor the opportunity for a hearing, before the Airport Authority concerning said rates."

In their brief on appeal, the petitioner-appellees state that after 1 October 1973 they were billed by the Authortiy on the basis of the new fees and charges but refused to pay the same and in January 1974 the petitioners began to pay, and the respondent Authority began to accept payments computed on the basis of the "old" rates without prejudice to the rights of either party. The petitioners further state in their brief that a suit instituted by the respondent Authority against the petitioners Delta, Eastern and United is now pending in the United States District Court for the Eastern District of North Carolina and a similar action against the petitioner Piedmont is now pending in the Superior Court of Wake County, each such action being

for the recovery of the difference between the fees and charges computed in accordance with the increased rates and the fees and charges computed in accordance with the old rates.

*Purrington, Hatch & Purrington by A. L. Purrington, Jr., and Edwin B. Hatch for respondent appellants.*

*Womble, Carlyle, Sandridge & Rice by E. Lawrence Davis and Jimmy H. Barnhill; Poyner, Geraghty, Hartsfield & Townsend by John J. Geraghty for petitioner appellees.*

LAKE, Justice.

The Authority was created by Chapter 168 of the Public-Local Laws of 1939. By that Act, as amended by Ch. 577 of the Session Laws of 1959, the Authority is authorized to own and operate the Raleigh-Durham Airport, to contract for the operation of "airline scheduled" flights, nonscheduled flights and other airplane activities and to charge and collect "reasonable and adequate" fees and rents for the use of its property and for services rendered in the operation thereof.

G.S. 63-1(14) provides that such an authority is a "municipality" within the meaning of Ch. 63 of the General Statutes. G.S. 63-53(5) authorizes a "municipality" to "determine the charges or rental for the use of any property [of the Authority] * * * and the charges for any services or accommodations [supplied by it]." G.S. 63-53(5) further provides that such charges "shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality."

[1] A municipality operating an airport acts in a proprietary capacity. *Airport Authority v. Stewart,* 278 N.C. 227, 179 S.E. 2d 424; *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371, rehear. den., 230 N.C. 759, 53 S.E. 2d 313. Upon the rehearing of *Rhodes v. Asheville, supra,* this Court said that the legislative declaration that such operation should be deemed a "governmental function [see G.S. 63-50] did not make it so, for that is a judicial and not a legislative question."

[2, 3] Thus, in determining the fee it will charge for the privilege of landing an aircraft upon its runway and the rent it will charge for the use of its properties, the Authority is acting as the proprietor of the property, not as a regulatory agency. The statement in *Candler v. Asheville,* 247 N.C. 398, 101 S.E. 2d

470, to the effect that a municipality in establishing rates it will charge for water is exercising a governmental function was not necessary to the decision in that case, is not supported by the authorities cited therefor and may no longer be deemed authoritative. That statement overlooks the distinction to be drawn between municipal action fixing rates to be charged by a public utility to its customers and municipal action fixing rates which the municipality, itself, will charge for its service. The former function is a governmental function. See: *Shirk v. City of Lancaster*, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688; *City of Seymour v. Texas Electric Service Co.*, 66 F. 2d 814, cert. den., 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590. The latter is a proprietary function.

[4, 5]  Thus, the managing board of the Authority, in determining landing fees and rentals which it will charge the users of its facilities, acts as does the board of directors of a private corporation owning and operating a like facility, subject only to limitations imposed upon it by statute or by contractual obligations assumed by it. Our attention has been directed to no statutory limitation imposed upon the Authority in the matter of fixing landing fees and rentals except the provision in Ch. 755 of the Session Laws of 1959 authorizing the Authority to charge "reasonable and adequate" fees and rents, and the provision of G.S. 63-53 (5) stating that the charges for the use of its properties "shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality." No provision in these statutes requires that the Authority conduct a hearing, receive evidence and make findings of fact or that it follow any other procedural course in determining the landing fees or rentals to be charged by it. Nothing in these statutes requires the Authority to give notice to present or prospective users of its properties that the Authority is contemplating a change in such fees and rental charges. The petitioners were notified of the increases more than three months before they were to become effective.

G.S. Ch. 143, Art. 33, provides a procedure by which a person aggrieved by a final "administrative decision" may obtain a judicial review of such decision. This article was repealed and a substitute therefor provided by Ch. 1331 of the Session Laws of 1973, but the repeal is not effective until 1 July 1975, and the repealing act provides that it shall not affect any pending

administrative hearing. Thus, if, by its terms, G.S. Ch. 143, Art. 33, applies to the present matter, the petitioners' right to proceed thereunder is not affected by the repeal.

The judicial review for which G.S. Ch. 143, Art. 33, provides is limited to the review of an "administrative decision" as that term is therein defined. G.S. 143-306 (2) defines "administrative decision," for the purposes of this article, to mean "any decision, order, or determination rendered by an administrative agency in a proceeding in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an opportunity for agency hearing."

As Justice Rodman, speaking for this Court in *Duke v. Shaw, Commissioner of Revenue,* 247 N.C. 236, 100 S.E. 2d 506, said, "Manifestly this statute [G.S. Ch. 143, Art. 33] contemplated a quasi-judicial hearing." See also, Hanft, 49 N. C. L. Rev. 635, where it is said: "The application of the Act * * * is plainly to adjudications and not to the process of making general regulations. * * * It has been noted that the * * * Act relates to administrative adjudication, not administrative legislation."

The decisions relied upon by the petitioners are distinguishable from the present matter. In *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, the administrative decision in question was an order of the Secretary of Agriculture under the Packers and Stockyards Act fixing commission rates to be charged by market agencies for the buying and selling of cattle in the Kansas City stockyard. The Act specifically required the Secretary to make certain findings as a condition precedent to the entry of an order fixing such commission rates. Thus, the administrative action in question was not the fixing of a charge to be made by an administrative board for the use of its own property or services but was the fixing of the fee which another legal entity might charge his or its customers. Clearly, this was the exercise of a governmental power determining the legal rights of specific parties and the Act empowering the Secretary to do so required him to make findings which, in turn, necessitated the holding of a quasi-judicial hearing. See also, *Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (second appeal in the same matter).

In *Jarrell v. Board of Adjustment,* 258 N.C. 476, 128 S.E. 2d 879, this Court said the Act here in question sets the stand-

ard to be met in determining the adequacy of the judicial review of an action of a municipal zoning board of adjustment denying the right of the petitioner to continue a nonconforming use claimed by him as a legal right. Such action is clearly an exercise of the city's governmental power and a determination of the right of a property owner to make a certain use of his property. Likewise, in *Refining Co. v. Board of Aldermen,* 284 N.C. 458, 202 S.E. 2d 129, the administrative action held reviewable, under this Act, was the denial to a landowner of a special use permit which the landowner claimed as a matter of legal right. *In re Carter,* 262 N.C. 360, 137 S.E. 2d 350, involved judicial review of an administrative decision expelling a student from the University of North Carolina. All of these cases involved a hearing by an administrative agency to find facts upon which the agency determined the legal right of another person. An administrative determination of the charge to be made by the administrative agency itself for the use of the agency's own property is of an entirely different nature.

[6] We, therefore, hold that the fixing by the Authority of the fees it will charge for the use of its property is not an "administrative decision" within the meaning of G.S. Ch. 143, Art. 33, and the procedure provided by that article for the obtaining of judicial review of "administrative decisions" is not applicable thereto. Consequently, it was error for the Superior Court to deny the motion of the Authority to dismiss this proceeding.

We do not have before us upon this appeal the merits of the contention of the petitioners that the proposed landing fees and rental charges are unreasonable or discriminatory and, therefore, in excess of the limitation imposed by G.S. 63-53 (5) upon the right of the Authority to fix charges for such use of its properties. Our decision herein does not deprive the petitioners of a judicial determination of these contentions by appropriate procedures. See G.S. 143-307. According to their brief, there are now pending in the Federal and State trial courts actions instituted against them by the Authority for the recovery of the charges here in question. Nothing in our present decision relates to the right of the petitioners to assert, in those proceedings, the illegality of the fees and charges sought to be collected therein.

Reversed.