HELEN J. RUSSELL v. JACK W. TAYLOR

No. 7726SC762

(Filed 15 August 1978)

1. **Rules of Civil Procedure § 41— nonjury trial—motion for dismissal**

The trial court in a nonjury trial was not compelled to make determinations of facts and pass upon a motion for involuntary dismissal under G.S. 1A-1, Rule 41(b) at the close of plaintiff's evidence but could decline to render judgment until the close of all the evidence, and no motion for involuntary dismissal at the close of all the evidence is provided for by Rule 41(b).

2. **Appeal and Error § 26— exception to signing of judgment—sufficiency of evidence not presented**

An exception to the signing of the judgment did not present the question of the sufficiency of the evidence to support the court's findings of fact.

3. **Trover and Conversion § 4— conversion of personalty—damages—common law**

The trial court properly ruled, under the common law, that the measure of damages for a wrongful conversion of personal property was the fair market value of the chattel at the time and place of conversion, and the evidence supported the court's award of $4,000 compensatory damages for conversion of a mobile home and its contents.

4. **Trover and Conversion § 4— conversion of mobile home and contents—punitive damages**

Plaintiff was not entitled to punitive damages under the common law for conversion of a mobile home and its contents where there was no finding or conclusion that the wrong was "done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights"; nor was plaintiff entitled to punitive damages under the provisions of G.S. 99A-1.

APPEAL by defendant from *Martin (Harry C.), Judge.* Judgment entered 7 July 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 19 June 1978.

In her complaint plaintiff alleges that defendant sold a mobile home to her and her husband; that thereafter defendant wrongfully took possession of and converted the mobile home and its entire contents; and that she is entitled to recover actual and punitive damages from defendant pursuant to G.S. 99A-1. Plaintiff's husband did not join in the action but assigned his cause of action to plaintiff.

Defendant answered, asserting that he rented the mobile home to plaintiff and her husband but never sold it to them; and that he took possession of the property when plaintiff and her husband became delinquent in their rental payments. Defendant also filed a counterclaim, alleging that plaintiff had wrongfully caused him to be arrested for his taking possession of the mobile home and that no probable cause had been found for his arrest.

Following a trial without a jury, the court made findings of fact summarized in pertinent part as follows:

On or about 1 September 1971 plaintiff and defendant entered into an agreement whereby defendant agreed to sell to plaintiff a 1966 Mascot mobile home in consideration of plaintiff paying the nineteen remaining payments thereon in amount of $72.19 each and also paying plaintiff $2,000.00. Plaintiff took possession of the mobile home and removed it to Boiling Springs Lakes, N.C., where it was placed on a lot which plaintiff had purchased. Plaintiff spent approximately $1,295.43 for improvements to the lot.

On or about 29 September 1972 plaintiff executed to defendant a note (for $4,000) and as security therefor executed a second deed of trust on plaintiff's residence in Charlotte. In return, defendant paid plaintiff $2,000 in cash and applied the remaining $2,000 to payment of the $2,000 due defendant on the mobile home.

Plaintiff paid the 19 installments on the mobile home, either to the bank holding the security instrument thereon or to defendant in reimbursement for payments made by him, but defendant never delivered the title to the mobile home to plaintiff.

During the fall of 1973 plaintiff failed to make payments on the note secured by the second deed of trust aforesaid and defendant instituted foreclosure proceedings against plaintiff's

residence in Charlotte. At the foreclosure sale defendant bid $3,750 on said property and thereafter he was given a deed for the same by the trustee named in the deed of trust.

In early December 1973 defendant demanded that plaintiff return and surrender the mobile home located at Boiling Springs Lakes; plaintiff informed defendant that under no circumstances could he have the mobile home as it was serving as a permanent residence for her and three of her children who were attending school at Boiling Springs Lakes. Plaintiff told defendant that she owned the mobile home free and clear of all liens.

On or about 2 January 1974, while plaintiff and her family were in Charlotte, defendant, without the knowledge or consent of plaintiff, moved said mobile home and all of its contents to Myrtle Beach, South Carolina.

Upon learning of said act by defendant, plaintiff's husband, on 18 January 1974, obtained a warrant for defendant charging him with feloniously breaking into and entering the mobile home with intent to steal property located therein. Defendant was subsequently arrested and at a trial held on 18 February 1974 the court found no probable cause.

The value of the contents of the mobile home moved by defendant was approximately $2,069.25 and defendant has not returned said personal property or mobile home to plaintiff.

Upon said findings of fact, the court concluded as a matter of law that plaintiff was entitled to the immediate possession of the mobile home and all contents therein; that defendant had converted the mobile home and contents to his own use; that pursuant to G.S. 99A-1 plaintiff could recover actual and punitive damages from defendant; that the measure of actual damages for conversion of the property was its fair market value at the time and place of conversion; and that defendant was not entitled to recover anything from plaintiff because of his counterclaim.

The court adjudged that plaintiff recover of defendant $4,000 compensatory damages and $2,500 punitive damages; that defendant's counterclaim be dismissed; and that defendant pay the costs of the action.

Defendant appealed.

Russell v. Taylor

*Davis & Postlethwait, by Raymond W. Postlethwait, Jr., for plaintiff appellee.*

*James B. Ledford and C. B. Merryman, Jr., for defendant appellant.*

BRITT, Judge.

[1] By his first assignment of error defendant contends the court erred in failing to grant his motions for dismissal as to compensatory damages and punitive damages interposed at the close of plaintiff's evidence and at the close of all the evidence. This assignment has no merit.

Plaintiff's motions for dismissal purportedly were made pursuant to G.S. 1A-1, Rule 41(b), which provides in pertinent part:

"... After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. ..."

In *Helms v. Rea*, 282 N.C. 610, 619, 194 S.E. 2d 1 (1973), Justice (now Chief Justice) Sharp, speaking for the court regarding Rule 41(b) said: "The judge is not compelled to make determinations of facts and pass upon a motion for involuntary dismissal at the close of plaintiff's evidence. He may decline to render any judgment until the close of all the evidence and, as suggested by Phillips, 'except in the clearest cases' he should defer judgment until the close of all the evidence. ..." The court further stated that "[t]here is little point in such a motion at the close of all the evidence, since at that stage the judge will determine the facts in any event. ..."

In *Reid v. Midgett*, 25 N.C. App. 456, 213 S.E. 2d 379 (1975), this court held that Rule 41(b) does not provide for a motion for involuntary dismissal made at the close of all the evidence.

Furthermore, since the questions which defendant attempts to raise by his first assignment are hereinafter considered under another rule, we perceive no prejudice in the denial of his motions for involuntary dismissal.

[2] In his second assignment of error defendant contends that the evidence does not support the findings of fact and the judgment "pronounced thereon". This assignment is supported by Exception No. 6 which is at most an exception to the signing of the judgment. In 1 Strong's N.C. Index 3d, Appeal and Error § 28, p. 253, we find: "An exception to the findings of fact and conclusions of law and the judgment of the court, without exception to a particular finding, is a broadside exception which does not present for review the admissibility of the evidence on which the findings were made or the sufficiency of the evidence to support the findings. . . ."

We hold that the question of sufficiency of the evidence to support the findings of fact is not presented.

Nevertheless, Rule 10 of the Rules of Appellate Procedure, 287 N.C. 679, 699, provides, *inter alia*, that when an appeal is duly taken from a final judgment, any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the findings of fact and conclusions of law, notwithstanding the absence of an exception or assignment of error in the record on appeal. Since defendant discusses the sufficiency of the findings of fact and conclusions of law to support the judgment awarding compensatory damages and punitive damages, we proceed to pass upon those questions.

We determine first if the common law permitted compensatory and punitive damages under the findings and conclusions made in this case.

[3] The theory of plaintiff's action and the premise of the judgment is wrongful conversion of personal property. The trial court properly ruled, under the common law, that the measure of damages for a wrongful conversion of personal property is the fair market value of the chattel at the time and place of conversion. (Interest is also allowable.) *Crouch v. Trucking Company*, 262 N.C. 85, 136 S.E. 2d 246 (1964); *Seymour v. Sales Company*, 257 N.C. 603, 127 S.E. 2d 265 (1962); *Fagan v. Hazzard*, 29 N.C. App. 618, 225 S.E. 2d 640 (1976).

Russell v. Taylor

In the case *sub judice*, the findings of fact and conclusions of law fully support the award of $4,000 compensatory damages. The finding that while plaintiff and her family were in Charlotte, and without her knowledge or consent, defendant moved the mobile home and contents from Boiling Springs Lakes to Myrtle Beach supports the conclusion that defendant converted the same to his own use. The findings that plaintiff paid nineteen payments at $72.19 each, a total of $1,371.61; that defendant accepted a note from plaintiff for $4,000, secured by a second deed of trust on real estate in Charlotte, $2,000 of which was in payment of the obligation on the mobile home; that plaintiff spent approximately $1,295.43 for improvements to the lot (preparatory to locating the mobile home thereon); and that the value of the contents of the mobile home moved by defendant was approximately $2,069.25, were more than sufficient to show that the fair market value at the time and place of conversion was $4,000.00.

[4] We now turn to the question of punitive damages which are generally defined or described as "damages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious or oppressive character of the acts complained of." 22 Am. Jur. 2d, Damages § 236, p. 322. Under the common law of this State punitive damages may be awarded "when the wrong is done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights." 5 Strong's N.C. Index 3d, Damages § 11, p. 27.

We do not think the findings and conclusions justified an award of punitive damages under the common law. There was no finding or conclusion that the wrong was "done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights."

We now determine if a statute permitted plaintiff to recover compensatory and punitive damages under the findings and conclusions made in this case.

Plaintiff alleged in her complaint, and the court concluded, that she was entitled to recover actual and punitive damages by virtue of G.S. 99A-1. This statute provides as follows:

§ 99A-1. Recovery of damages for interference with property rights.—Notwithstanding any other provisions of the General Statutes of North Carolina, when personal property is wrongfully taken and carried away from the owner or person in lawful possession of such property without his consent and with the intent to permanently deprive him of the use, possession and enjoyment of said property, a right of action arises for recovery of actual and punitive damages from any person who has, or has had, possession of said property knowing the property to be stolen.

An agent having possession, actual or constructive, of property lawfully owned by his principal, shall have a right of action in behalf of his principal for any unlawful interference with that possession by a third person.

In cases of bailments where the possession is in the bailee, a trespass committed during the existence of the bailment shall give a right of action to the bailee for the interference with his special property and a concurrent right of action to the bailor for the interference with his general property.

Any abuse of, or damage done to, the personal property of another or one who is in possession thereof, unlawfully, is a trespass for which damages may be recovered. (1973, c. 809.)

We find it very difficult to interpret this statute. We have investigated the legislative history of the statute (Ch. 809, 1973 S.L., S.B. 751) and find, among other things, that the original bill was rewritten by a Senate Committee and that the committee substitute was amended twice by floor amendments in the House of Representatives. The title of the bill is "AN ACT TO CREATE A RIGHT OF ACTION FOR RECOVERY OF ACTUAL AND PUNITIVE DAMAGES BY MERE POSSESSION OF PROPERTY FROM THIEVES, FENCES AND BUYERS OF STOLEN MERCHANDISE." "Where the meaning of a statute is in doubt, reference may be had to the title and context of the act as legislative declarations of its purpose. However, the title does not control the text." 7 Strong's N.C. Index 2d, Statutes § 5, p. 77.

It is reasonably clear that the first paragraph of the act is fairly consistent with the title, that the owner of stolen property may collect actual and punitive damages from one who is criminally guilty of receiving the stolen property. Paragraphs two and three merely create rights of action in agents of the owners and bailees of the personal property the possession of which has been unlawfully interfered with.

Since there was no finding of fact that defendant received the mobile home and contents in question, "knowing the property to be stolen", actual or punitive damages could not be awarded pursuant to the first paragraph of the statute.

The remaining question is whether the last paragraph of the act authorizes actual and punitive damages under the findings of fact. The strongest finding by the court was that while plaintiff and her family were in Charlotte defendant, without her knowledge or consent, moved the mobile home and contents to Myrtle Beach. Assuming, *arguendo*, that this was an "unlawful" abuse of or damage to the property which would support the recovery of any kind of damages pursuant to the act, we do not think it would support a recovery of punitive damages.

Statutes in derogation of the common law and statutes imposing a penalty must be strictly construed. *Ibid*, page 74. While the last paragraph of G.S. 99A-1 provides for the recovery of damages for an "unlawful" abuse of or damage to the personal property of another, whatever that means, it says nothing about *punitive* damages. Black's Law Dictionary, Deluxe Fourth Edition, page 1399, defines punitive thusly: "Relating to punishment; having the character of punishment or penalty; inflicting punishment or a penalty."

Applying a strict construction to the last paragraph of G.S. 99A-1, as we are compelled to do, we hold that it does not authorize the recovery of punitive damages. Therefore, since, under the findings and conclusions made by the trial court in this case, punitive damages are not authorized by the common law or said statute, we hold that the court erred in awarding punitive damages.

For the reasons stated, the judgment awarding plaintiff $4,000 compensatory damages is affirmed but the judgment awarding $2,500 punitive damages is reversed.

Affirmed in part, reversed in part.

Judges ARNOLD and ERWIN concur.