TOWN OF SPRING HOPE, A MUNICIPAL CORPORATION v. BEN T. BISSETTE

No. 807DC1016

(Filed 21 July 1981)

**Municipal Corporations § 4.4— construction of water and sewer facilities—setting of rates to recoup costs**

Where the cost of necessary new facilities constructed to serve a municipality's customers are known or are predictable, rates calculated to begin recoupment of those costs are not unlawful or illegal merely because the new facilities have not yet been put into actual use, and the test is not whether any particular customer has directly benefited from the use of a particular component of the utility plant, but whether the municipal authority has acted arbitrarily in establishing its rates.

Judge CLARK dissenting.

APPEAL by plaintiff from *Ezzell, Judge.* Judgment entered 15 July 1980 in District Court, NASH County. Heard in the Court of Appeals 28 April 1981.

Plaintiff brought this action to recover charges for sewer services furnished by plaintiff to defendant's launderette for the period of 25 June 1979 through 31 August 1979, in the sum of $306.00. Defendant answered, denying the indebtedness and alleging that the sewer charges sought to be recovered by plaintiff were unjust and illegal. The matter was heard by the trial court, without a jury. Based upon his findings of fact and conclusions of law, the trial court entered judgment for defendant from which plaintiff has appealed.

*Valentine, Adams & Lamar, by I. T. Valentine, Jr., for plaintiff-appellant.*

*Ben T. Bissette, defendant-appellee, pro se.*

WELLS, Judge.

To put this matter in proper factual context, we quote the trial court's findings of fact in their entirety.

1. The Town is a municipal corporation situated in Nash County, North Carolina, and was organized and exists under and by virtue of the laws of the State of North Carolina.

2. The plaintiff, a municipality, is authorized to operate a water and sewer system for the benefit of its citizens and persons outside of the corporate limits of the Town who pay a rate set by the municipality for these services.

3. Prior to July 1, 1979, it became necessary for the Plaintiff Town to improve and update its water and sewer system, particularly its waste water disposal facilities to meet federal and state guidelines and requirements and this necessitated a considerable outlay of capital.

4. Construction was commenced prior to July 1, 1979, on a new waste water treatment facility which was not completed and placed in operation until December, 1979.

5. The plaintiff increased its water and sewer rates to help pay for the new water treatment facility. The rates were increased effective July 1, 1979, and the defendant was sent a bill for $413.00 covering the period from June 25th through August 31, 1979.

6. While the defendant was engaged in the business of operating a launderette in the Town of Spring Hope during the time covered by the bill and receiving water from the Town and using the Town's sewer system, the new waste water disposal facility had not been completed and was not in operation during any of the time covered by the bill presented to him and, in fact, was not completed until December, 1979.

7. While the defendant was a user of the water-sewer system during the period covered by this bill, he was not a user of the new plant facility or new waste water treatment facility as the same was not in operation during the period of time covered by his bill.

Upon these findings of fact, the trial court entered the following pertinent conclusion of law:

3. The Town has complied with all laws in connection with the increase of rates, but since the increase in rates was made ·necessary to finance new waste water treatment facilities and since the defendant was not a user of the new waste water facility during the time covered by the bill, he is not required to pay the sewer portion of the bill.

Plaintiff made no exceptions to the trial court's findings of fact, nor does it dispute them in its brief. The sole question before us, therefore, is whether these findings support the court's conclusions of law and the judgment. *Employers Insurance v. Hall*, 49 N.C. App. 179, 180, 270 S.E. 2d 617, 618 (1980); *Russell v. Taylor*, 37 N.C. App. 520, 524, 246 S.E. 2d 569, 572 (1978).

The setting of rates and charges for water and sewer services furnished by a municipality to its customers is a proprietary function, subject only to limitations imposed upon such action by statute or contractual obligation assumed in such actions. *See Aviation, Inc. v. Airport Authority*, 288 N.C. 98, 102-103, 215 S.E. 2d 552, 555 (1975); *see also Construction Co. v. Raleigh*, 230 N.C. 365, 53 S.E. 2d 165 (1949). The statutory grant of authority to municipalities in North Carolina to set rates and charges for water and sewer services is contained in· G.S. 160A-314(a), as follows:

A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise. Schedules of rents, rates, fees, charges, and penalties may vary according to classes of service, and different schedules may. be adopted for services provided outside the corporate limits of the city.

Under this broad, unfettered grant of authority, the setting of such rates and charges is a matter for the judgment· and discretion of municipal authorities, not to be invalidated by the courts

absent some showing of arbitrary or discriminatory action. The great weight of authority is to the effect that in the setting of such rates and charges, a municipal body may include not only operating expenses and depreciation, but also capital cost associated with actual or anticipated growth or improvement of the facilities required for the furnishing of such services. *See generally* Annot., 61 A.L.R. 3d 1236 (1975); 12 McQuillin, Municipal Corporations, § 35.37C., at 488 (3d Ed. 1970); C. Rhyne, Municipal Law § 23-7, 500-501 (1957); 3 Yokley, Municipal Corporations § 503, at 214-19 (1958). We concur in this position, and hold that where, as is the case here, the cost of necessary new facilities constructed to serve the municipality's customers are known or are predictable, rates calculated to begin recoupment of those costs are not unlawful or illegal merely because the new facilities have not yet been put into actual use. The test is not whether any particular customer has directly benefited from the use of a discrete or particular component of the utility plant, but whether the municipal authority has acted arbitrarily in establishing its rates.

There is no showing of arbitrary action in the case now before us and we hold that the trial court entered its judgment under a misapprehension of applicable law.

Although the findings of fact by the trial court are not as detailed as the evidence would permit, defendant does not contest the correctness of the level of his bill, only its legality, and we therefore hold that the findings by the trial court are sufficient to require entry of judgment for plaintiff for the unpaid portion of defendant's water and sewer bill.

The judgment of the trial court is reversed and this matter is remanded to the trial court for entry of judgment in favor of the plaintiff.

Reversed and remanded.

Judge VAUGHN concurs.

Judge CLARK dissents.

CLARK, Judge, dissenting:

Municipal action fixing rates which a municipality will charge for services it renders is a proprietary, as opposed to a governmental, function of local government. *Aviation, Inc. v. Airport Authority*, 288 N.C. 98, 215 S.E. 2d 552 (1975). I agree with the majority that, in determining the rates it will charge for performance of a proprietary function, the governing board of a municipality "acts as does the board of directors of a private corporation owning and operating a like facility, subject only to limitations imposed upon it by statute or by contractual obligations assumed by it." *Id.* at 103, 215 S.E. 2d at 555. I disagree, however, that, the statute allowing imposition of water and sewer rates, G.S. 160A-314(a), is an unfettered grant of authority allowing a municipality to charge for services not yet furnished by the municipality.

As I construe G.S. 160A-314(a), the authority of a municipality to fix rates for water and sewer services is limited to charges for services which are actually being furnished. In this interpretation, I have attempted to construe strictly and precisely the legislative wording of the statute. While a municipality has discretion to establish rates for services furnished, it does not have the authority to charge for services "to be furnished." Contrast with G.S. 160A-314(a) the parallel grant of authority to water and sewer authorities to fix rates, G.S. 162A-9, which reads, in pertinent part:

> "Each authority shall fix, and may revise from time to time, reasonable rates, fees and other charges for the use of and for the services furnished *or to be furnished* by any water system or sewer system or parts thereof owned or operated by such authority." [Emphasis added.]

To protect against possible abuses of this broad grant of power, the legislature directed water and sewer authorities to hold all moneys received pursuant to their statutory authority as trust funds to be applied solely as provided by statute. G.S. 162A-11. There is no comparable statute in the article granting municipalities the power to set water and sewer rates. Additionally, plaintiff's attempt to analogize its ability to charge in advance for services to be rendered by facilities under construction, to the ability of public utility companies to charge in advance for serv-

ices to be rendered by facilities under construction, further emphasizes its lack of statutory authority to charge for future services. Pursuant to the provisions of G.S. 62-133(b)(1), the North Carolina Utilities Commission, in establishing rates for public utilities, has the explicit authority to consider "reasonable and prudent expenditures for construction work *in progress* . . . ." [Emphasis added.]

I believe that these two statutes accentuate the statutory restrictions placed upon municipalities in setting water and sewer rates. Had the General Assembly intended that municipalities be able to establish rates for services to be furnished, it could very easily have expressed this intention. The General Assembly having clearly expressed its will, the courts of this State are without power to interpolate or superimpose conditions which are not called for in the statute. *See, e.g., Board of Architecture v. Lee,* 264 N.C. 602, 142 S.E. 2d 643 (1965).

In concluding that municipalities have no power to establish rates to pay for construction of new, unused facilities, I am not unmindful of the dilemma this ruling poses for local governments. I believe, however, that the legislative scheme grants towns and cities the ability to finance new construction of water and sewage disposal systems through the levying of special assessments. *See* G.S. 160A-216(3), (4). It is noteworthy that plaintiff argued in the present case as though the increase in rates were an assessment. The increase, however, was not an assessment. The nature of the charge was not that of an assessment. " 'It is the majority rule that sewer service charges are neither taxes nor assessments, but are tolls or rents for benefits received by the user of the sewer system . . . .' " *Covington v. Rockingham,* 266 N.C. 507, 511-12, 146 S.E. 2d 420, 423 (1966), quoting Rhyne, MUNICIPAL LAW, *Sewers and Drains,* § 20-5, p. 462, et seq. Furthermore, the procedure for establishing an assessment was not followed by plaintiff.

Throughout the litigation of the case *sub judice,* the position of the plaintiff was consistent: the increase in overall water and sewer charges was caused by the need to service the debt related to, and otherwise to pay for, the waste water treatment facility which was not at the time in use. Under North Carolina law, this increase was, therefore, improper.

I would affirm the judgment of the trial court.