DEEMUS A. PULLIAM, JR. AND WIFE, LINDA C. PULLIAM, PLAINTIFFS-
APPELLANTS v. CITY OF GREENSBORO, DEFENDANT-APPELLEE

No. 9018SC1222

(Filed 20 August 1991)

1. **Municipal Corporations § 21 (NCI3d) — sewage overflow — tort liability — no municipal immunity**

   Defendant city was not immune from tort liability in an action in which plaintiffs sought damages for the negligent maintenance, operation, and repair of defendant's sewer lines, resulting in an overflow into plaintiffs' home. It seems to be the accepted practice in North Carolina for cities and towns to compete with private enterprise by the ownership and operation of public enterprises, including sewer services. Additionally, N.C. courts have clearly stated that municipalities act in a proprietary role in setting rates for public enterprise services. The modern tendency to restrict the application of governmental immunity must apply in this case.

   **Am Jur 2d, Municipal, County, School, and State Tort Liability § 363.**

   **Municipal operation of sewage disposal plant as governmental or proprietary function, for purposes of tort liability. 57 ALR2d 1336.**

2. **Municipal Corporations § 21 (NCI3d) — sewage overflow — negligence of city — summary judgment improper**

   The trial court improperly granted summary judgment for defendant city in a negligence action arising from a sewage overflow where the evidence showed that defendant had been notified of other blockages of this same sewer main and had failed to adequately inspect the mains for subsequent blockage; plaintiffs had suffered no damage to their home before defendant's crew responded to repair the clog; defendant possessed adequate equipment, if used properly, to unclog the sewer main; and raw sewage was forced through plaintiffs' sewer pipes and into plaintiffs' home during defendant's attempts to unclog the sewer main. This forecast of evidence was sufficient to raise the issues of whether defendant negligently failed to inspect its sewer lines or acted negligently in repairing the sewer lines.

PULLIAM v. CITY OF GREENSBORO

[103 N.C. App. 748 (1991)]

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 376, 388.**

**Municipality's liability for damage resulting from obstruction or clogging of drains or sewers. 59 ALR2d 281.**

3. **Municipal Corporations § 21 (NCI3d)— sewage overflow— application of city ordinance—absence of backflow valve— summary judgment**

The trial court improperly granted summary judgment for defendant city in an action arising from a sewage overflow into plaintiffs' home where defendant alleged that the action was barred by a city ordinance concerning plumbing fixtures below street level and by the failure of plaintiffs to install a back-flow valve. The applicability of the ordinance would not absolve defendant, but would raise issues of whether plaintiffs' plumbing fell within the ordinance and whether such conditions contributed to their injury. The backflow valve issue was highlighted but not settled by the forecast of evidence.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 360.**

APPEAL by plaintiffs from order dated 10 September 1990 in GUILFORD County Superior Court by *Judge W. Stephen Allen, Jr.* granting defendant's motion for summary judgment and dismissing plaintiffs' action.

The forecast of evidence in this record tends to show the following facts and circumstances. Since 11 June 1977 plaintiffs have owned a residence located at 515 Rocky Knoll Road in Greensboro, served by defendant's sewer system, subject to defendant's rates and charges for such service. On 30 July 1989 plaintiffs reported to defendant that raw sewage was overflowing from a manhole and running down Rocky Knoll Road. Defendant's responding crew used a power rodder to unclog the sewer main that was clogged by tree roots. While defendant's crew attempted to remove the obstruction from the sewer mains, raw sewage backed up and was forced through plaintiffs' connecting sewer line and overflowed into plaintiffs' home.

The overflow caused considerable damage to the lower floor of plaintiffs' home, including damage to plaintiffs' carpets, furniture and personal keepsakes. The sewage overflow also forced plaintiff

Linda Pulliam to temporarily close the business she operated inside their home.

On 29 December 1989 plaintiffs filed this action against defendant seeking damages for negligent maintenance, operation and repair of defendant's sewer lines. Defendant answered with general denials, asserted contributory negligence and also asserted the defense of governmental immunity. On 5 July 1990 defendant filed a motion for summary judgment. In an order dated 10 September 1990, the trial court granted defendant's motion for summary judgment and dismissed plaintiffs' action. Plaintiffs appeal.

*Rivenbark, Kirkman, Alspaugh & Moore, by Jewel A. Farlow, for plaintiffs-appellants.*

*Nichols, Caffrey, Hill, Evans and Murrelle, by Joseph R. Beatty and Polly D. Sizemore, for defendant-appellee.*

WELLS, Judge.

Plaintiffs assign error to the trial court's granting of summary judgment in favor of defendant. Plaintiffs contend that questions of material fact exist as to whether defendant's operation and maintenance of its sewer lines was a proprietary or governmental function; if a governmental function, then whether defendant waived its governmental immunity by participating in a risk pool; and if so, whether plaintiffs' forecast of evidence presented a material question of fact regarding defendant's negligence.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. 1A-1, Rule 56(c). A movant may show that he is entitled to summary judgment as a matter of law by presenting a forecast of evidence that shows an essential element of the opposing party's claim is nonexistent or that the opposing party cannot produce evidence to support an essential element of his or her claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974).

### I. *Governmental Immunity*

[1]  Plaintiffs contend that defendant was engaged in a proprietary function in the operation and maintenance of its sewer line. Defend-

**PULLIAM v. CITY OF GREENSBORO**

[103 N.C. App. 748 (1991)]

ant contends that it was engaged in a governmental function in the operation and maintenance of its main sewer line and that immunity bars negligent liability.

Whether a municipality may be held liable for negligence depends on whether it acts in its governmental or proprietary capacity:

> "When power conferred has relation to public purposes and for the public good, it is to be classified as governmental in its nature and appertains to the corporation in its political capacity. But when it relates to the accomplishment of private purposes in which the public is only indirectly concerned, it is private in its nature, and the municipality, in respect to its exercise, is regarded as a legal individual. In the former case the corporation is exempt from all liability, whether for nonuser or misuser; while in the latter case it may be held to that degree of responsibility which would attach to an ordinary corporation."

*McCombs v. City of Asheboro*, 6 N.C. App. 234, 170 S.E.2d 169 (1969) (*quoting Metz v. Asheville*, 150 N.C. 748, 64 S.E.2d 881 (1909) ).

Our courts have long noted that drawing the line between municipal operations which are proprietary and subject to tort liability versus operations which are governmental and immune from such liability is a difficult task. *Millar v. Wilson*, 222 N.C. 340, 23 S.E.2d 42 (1942) (noting that maintenance of public roads and highways is recognized as governmental while imposing liability on a municipality for negligent failure to keep its streets and sidewalks in reasonably safe condition as an "illogical" but uniformly applied exception); *Sides v. Hospital*, 287 N.C. 14, 213 S.E.2d 297 (1975) (First, noting that courts have applied one classification to an activity in general while applying the opposite classification to certain phases of the same activity; Second, noting that courts have applied a proprietary classification to the exact activities that courts have previously determined that expenditures for such activities, *e.g.* airports, garbage removal and public parks, are for a public purpose.). The "application of the [governmental-proprietary distinction] to given factual situations has resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897 (1972).

Defendant's principal argument seems to be that due to the public's vital interest in sanitary sewer service, such service should be regarded as a governmental function. While this argument has superficial appeal, we do not find it to be dispositive.

In 1971, the General Assembly extensively revised and rewrote the statutory law relating to cities and towns in North Carolina. *See* Chapter 160A of the North Carolina General Statutes. In doing so, the legislature adopted a new Article 16, entitled Public Enterprises. G.S. § 160A-311 defines public enterprises:

### § 160A-311. Public enterprise defined.

As used in this Article, the term "public enterprise" includes:

(1) Electric power generation, transmission, and distribution systems;

(2) Water supply and distribution systems;

(3) Sewage collection and disposal systems of all types, including septic tank systems or other on-site collection or disposal facilities or systems;

(4) Gas production, storage, transmission, and distribution systems, where systems shall also include the purchase and/or lease of natural gas fields and natural gas reserves, the purchase of natural gas supplies, and the surveying, drilling and any other activities related to the exploration for natural gas, whether within the State or without;

(5) Public transportation systems;

(6) Solid waste collection and disposal systems and facilities;

(7) Cable television systems;

(8) Off-street parking facilities and systems;

(9) Airports.

N.C. Gen. Stat. § 160A-311 (1987). G.S. § 160A-314 provides:

### § 160A-314. Authority to fix and enforce rates.

(a) A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise. Schedules of rents, rates, fees, charges, and pen-

alties may vary according to classes of service, and different schedules may be adopted for services provided outside the corporate limits of the city.

(b) A city shall have power to collect delinquent accounts by any remedy provided by law for collecting and enforcing private debts. . . .

N.C. Gen. Stat. § 160A-314 (1987). G.S. § 160A-319 provides:

§ 160A-319. Utility franchises.

A city shall have authority to grant upon reasonable terms franchises for the operation within the city of any of the enterprises listed in G.S. 160A-311 and for the operation of telephone systems. No franchise shall be granted for a period of more than 60 years, and cable television franchises shall not be granted for a period of more than 20 years. Except as otherwise provided by law, when a city operates an enterprise, or upon granting a franchise, a city may by ordinance make it unlawful to operate an enterprise without a franchise.

N.C. Gen. Stat. § 160A-319 (1987).

Over the years, an interesting pattern of public enterprise activity has emerged in North Carolina. While it appears that the dominant pattern of sewer services in municipalities is serviced by the municipality, according to the records of the North Carolina Utilities Commission, there are at least four municipalities in the State in which sewer service is provided by privately owned public utilities. In addition, there are eighty-eight privately owned public utilities providing service in non-municipal areas. There are seventy-two municipalities which provide electric service, both inside and outside municipal limits. There are eight municipalities which own and operate natural gas distribution systems. There are some municipalities which own and operate airports.

Thus, it seems to be an accepted practice in North Carolina for cities and towns to compete with private enterprise by the ownership and operation of these public enterprises recognized by the General Assembly. Additionally, our courts have clearly stated that in setting rates for public enterprise services, municipalities act in a proprietary role. *See Aviation, Inc. v. Airport Authority*, 288 N.C. 98, 215 S.E.2d 552 (1975), and *Town of*

*Spring Hope v. Bissette*, 53 N.C. App. 210, 280 S.E.2d 490 (1981). In *Aviation, Inc., supra*, the court flatly stated that "A municipality operating an airport acts in a proprietary capacity."

While we recognize the public's vital interest in dependable sanitary sewer service in municipal areas and that people living in cities and towns expect to have such service, it may be said that in today's society, electric service is also vital and that almost no one tries to live without its benefits. We also note with interest that those customers who don't pay their water and sewer bills are doomed to deprivation of that service however vital to clean living that service may be.

In the light of all this background, we are persuaded that the modern tendency to restrict the application of governmental immunity must apply in this case.

> . . . [W]e recognize merit in the modern tendency to restrict rather than to extend the application of governmental immunity. This trend is based, *inter alia*, on the large expansion of municipal activities, the availability of liability insurance, and the plain injustice of denying relief to an individual injured by the wrongdoing of a municipality. A corollary to the tendency of modern authorities to restrict rather than to extend the application of governmental immunity is the rule that in cases of doubtful liability application of the rule should be resolved against the municipality. (Citations omitted.)

*Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E.2d 897, *reh'g denied*, 281 N.C. 516 (1972).

Accordingly, we hold that defendant city is not immune from tort liability in the operation of its sewer system and is answerable to these plaintiffs for any negligent act which may have caused them injury and damage.

## II. *Negligence*

[2]   Plaintiffs next contend that their forecast of evidence presents a material question of fact regarding defendant's negligence. We agree.

A *prima facie* case of negligence liability is alleged when plaintiffs show that defendant owed a duty of care; defendant breached that duty; the breach was actual and the proximate cause of plaintiffs' injury; and damages resulted from the injury. *Frendlich v.*

*Vaughan's Foods*, 64 N.C. App. 332, 307 S.E.2d 412 (1983). Summary judgment is rarely appropriate in negligence cases where the standard of the reasonable prudent person is to be applied. *White v. Hunsinger*, 88 N.C. App. 382, 363 S.E.2d 203 (1988). In ruling on a motion for summary judgment, the court must consider the evidence in the light most favorable to the nonmovant, *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. rev. denied*, 315 N.C. 597, 341 S.E.2d 39 (1986), and give the non-movant all favorable inferences which may reasonably be drawn from the evidence. *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E.2d 289 (1974). The moving party's "papers are carefully scrutinized and all inferences are resolved against him." *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976).

Viewed in the light most favorable to the non-movant, plaintiffs' evidence shows the following facts and circumstances. Prior to the events giving rise to this action, defendant had been notified of other blockages of this same sewer main and defendant failed to adequately inspect the mains for subsequent blockage. Despite the clogged sewer, plaintiffs had suffered no damage to their home before defendant's crew responded to repair the clog. Defendant possessed the adequate equipment, if used properly, to unclog the sewer main. During defendant's attempt to unclog the sewer main, raw sewage was forced through plaintiffs' sewer pipes and into plaintiffs' home. This forecast of evidence is sufficient to raise the issues of whether defendant negligently failed to inspect its sewer lines or acted negligently in repairing the sewer lines.

[3] Defendant further contends that the trial court properly granted defendant's motion for summary judgment because plaintiffs' claim is barred by Greensboro Code of Ordinance § 6-262, § 110.1 which states:

> If the owner of any building or structure starts and installs any plumbing fixtures in or above a floor which is below the level of the center line of the street in which the sewer line is serving the building is located, the city shall not be liable for any damage arising from such installation, and the owner shall be deemed to have released the City of Greensboro from any claim for damage caused by sewage backing up into any such plumbing fixtures.

The applicability of the ordinance would not absolve defendant in this case, but would raise the issues of: (1) whether plaintiffs'

IN RE FORECLOSURE OF WEINMAN ASSOCIATES

[103 N.C. App. 756 (1991)]

plumbing fell within the purview of the ordinance, and (2) if so, whether such conditions contributed to plaintiffs' injury.

Defendant also asserts that the failure of plaintiffs to install a backflow valve on the sewer lateral on their property was a contributing cause of their injury and that such contributory negligence should bar plaintiffs' claim. The forecast of evidence merely highlights that issue; it does not settle it beyond question.

For the reasons stated, we hold that the trial court erred in granting summary judgment in favor of defendant.

Reversed.

Judges ARNOLD and PHILLIPS concur.