JOHN A. WOODIE v. TOWN OF NORTH WILKESBORO.

(Filed 15 May, 1912.)

1. Evidence—Character Witnesses—Impeachment—Collateral Matters.

When a witness has testified to the good character of one of the parties litigant, it is incompetent, on cross-examination, to ask the witness if he could consider a man as having a good character who would be guilty of certain specified acts, for questions of this character would seek to inject into the case questions of fact foreign to the issues involved.

2. Cities and Towns—Waterworks—Overflow—Negligence—Frightened Horses—Proximate Cause.

When there is evidence tending to show that a city engaged in supplying its citizens with water has failed to provide a water gauge at its pump-house, by which its operator there could tell whether the standpipe, placed at a distance, was overflowing, and that its overflow frightened the horse of a person driving past, causing him injury, which would not otherwise have occurred, it is sufficient upon the question of actionable negligence; the overflowing standpipe, if causing the injury, being the proximate cause.

3. Cities and Towns—Waterworks—Business of Supplying Citizens—Governmental Functions.

An incorporated town or city supplying its own citizens with water, etc., owes the same duties towards its employees and the public as an individual or private corporation under like circumstances, and to the same extent is responsible for its negligent acts, since in operating such public utilities it is exercising a corporate and not a governmental function.

4. Cities and Towns—Waterworks—Overflow—Contributory Negligence—Rule of Prudent Man—Questions for Jury.

There being evidence in this case tending to show that defendant by its negligence in failing to supply its operator at its pumping station with an accurate water gauge, caused water to overflow its standpipe and frightened the horses of the plaintiff

to his injury, it is held that the plaintiff was only required, under the circumstances, to exercise that care which a man of ordinary prudence would have used, and that the question of contributory negligence was properly submitted to the jury.

APPEAL from *Foushee, J.,* at Fall Term, 1911, of WILKES.

Civil action. The following issues were submitted to the jury:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

3. What damage, if any, is the plaintiff entitled to recover? Answer: $800.

From the verdict and judgment rendered, the defendant appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*W. W. Barber, C. B. Spicer, and T. C. Bowie for the plaintiff.*
*Frank D. Hackett for the defendant.*

BROWN, J. This action is brought by the plaintiff against the defendant to recover damages for the alleged negligence of the defendant in the operation of its waterworks. The plaintiff alleges that the defendant, a municipal corporation, was duly authorized to construct and maintain a system of waterworks, and lease, sell, and dispose of water and water privileges to the citizens of the town for compensation.

It appears in the evidence that the standpipe of the said waterworks is situated some distance from the pumping station, and the alleged negligence consists in not having a proper water gauge at the pumping station to indicate to the pumper when the standpipe was full of water, so as to prevent dangerous overflow.

On ... October, 1910, plaintiff was driving his horses and wagon by the pumping station, and alleges that the overflow of the standpipe was so great that it frightened his horses, caused them to run away, threw him out, as well as his daughter who was with him, damaged the wagon, and greatly injured the plaintiff.

Several assignments of error relate to testimony offered tending to prove the condition of the wagon after the accident, the repairs that were put on' it, the injury to the habits of the horses, caused by the runaway, and as to the worth of the horses before the accident and immediately afterwards. We think it unnecessary to discuss these assignments of error, as in our opinion the testimony was plainly competent.

The plaintiff's witness David Hart, after testifying to facts material to the case, stated that he had known the plaintiff for thirty years, and that his general character was good. The defendant then asked him the following question:

"Do you think a man that will go to a distillery and try to run another man away with gun and sticks and other weapons, and attend a lynching bee, and help lynch a man, is a man of good character?"

This question was plainly incompetent, as it sought to inject into the case questions of fact utterly foreign to the issues in the case.

As said by *Mr. Justice Allen* in *S. v. Holly,* 155 N. C., 493, "If one collateral question of this character can be raised and tried, the same rule would permit a hundred others. The authorities in this State are numerous and uniform that it is an error to allow such questions on the cross-examination of a witness as to character." The learned judge cites practically all of the precedents in our reports.

The defendant entered the usual motion to nonsuit, which we think was properly overruled.

There was evidence tending to prove that the standpipe was overflowing at the time the plaintiff drove by with his horses, wagon, and daughter; that there was no accurate water gauge by which the operator at the pumping station could ascertain whether the standpipe was overflowing or not; testimony is to the fact that he had to depend upon somebody's telephoning him, and that after this accident the defendant caused a proper water gauge to be put in.

From examination of the evidence we are of opinion that it was a fair inference to be drawn by the jury as to whether the

overflow of the water caused the horses to run away, and that his Honor properly left the question to the jury to determine.

The evidence as to the damage is plenary.

As to the defendant's contention in regard to the proximate cause of the injury, we think it too plain for argument that if the horses were frightened by the overflowing standpipe, causing them to run away, that was the proximate cause of the injury, and the sole cause. *Clark v. R. R.,* 109 N. C., 430.

We have held at this term that when a city operates an electric light plant, its duties towards its employes, as well as towards the public, are the same as those of an individual or private corporation under like circumstances, since in operating such public utilities the city is exercising a corporate and not a governmental function. *Terrell v. Washington,* 158 N. C., 281.

It was plainly the duty of the defendant to have provided a proper water gauge so as to have prevented the overflow of its standpipe, and it is evident from the testimony that if one had been provided the overflow of water would have been prevented by the operator at the pumping station.

It is very doubtful whether there is any evidence of contributory negligence. Under conditions similar to those in which the plaintiff was placed, he was not required to act with absolute wisdom, but only to exercise that care which a man of ordinary prudence would have exercised when so placed. *Hinshaw v. R. R.,* 118 N. C., 1047.

In leaving this question of contributory negligence to the jury under what is known as the "rule of the prudent man," we think his Honor gave the defendant the benefit of everything it was entitled to.

No error.