TOWN OF SPRING HOPE, a MUNICIPAL CORPORATION v. BEN T. BISSETTE

No. 98A81

(Filed 3 March 1982)

**Municipal Corporations § 4.4— increase in water and sewer rates—payment for plant not yet in operation**

> The Town of Spring Hope acted within its statutory authority when it increased water and sewer charges to pay for a new waste water treatment plant prior to the time the new plant began operation. G.S. 160A-314(a).

Justice MEYER concurring.

Justices COPELAND, CARLTON and MITCHELL join in the concurring opinion.

Justice EXUM dissenting.

APPEAL by defendant Ben T. Bissette from the decision of the Court of Appeals reported at 53 N.C. App. 210, 280 S.E. 2d 490 (1981), reversing and remanding the judgment of *Ezzell, Judge*, entered at the 20 March 1980 Civil Session of District Court, NASH County, in favor of defendant Bissette. The case was argued in the Supreme Court as No. 98, Fall Term 1981.

The facts of the case are not in dispute. The Town of Spring Hope has for some time maintained a water and sewer system for its residents. In 1971 the Town was informed by the State Department of Water and Air Resources that its waste water treatment facility was inadequate to protect the receiving waters of Hendricks and Sapony Creeks, into which the treated water was discharged, and that the Town must take remedial action. The Town was notified that its permit to discharge waste into Hendricks Creek had expired and was granted a temporary permit to discharge waste into Hendricks Creek after it had submitted a time schedule for upgrading the facilities to meet current Water and Air Resources standards.

In order to meet State standards it was necessary for the Town to construct a new waste water treatment facility. Government grants paid for a large portion of the project, and most of the remainder of the cost was defrayed by the issuance by the Town of sanitary sewer bond anticipation notes. In June of 1979 the Town increased its water and sewer rates "to finance the new water treatment plant, both its construction, operation and maintenance."

Appellant operated a launderette in the Town of Spring Hope during the first month in which the new rates took effect. During that month the new waste water treatment facility, although substantially completed, had not yet begun operation. Appellant paid that portion of his bill denominated as the charge for water service. He refused to pay the portion of the bill denominated as the charge for sewer service, contending that only users of the new facility should be required to pay. Since he did not use the

new facility during the billing period (and, indeed, never used the facility because he went out of business before the facility began operation), appellant felt he should not have to pay the increased billing rates.

The Town brought this action to recover $306.00 from appellant representing the sewer charges which he had refused to pay. The District Court found facts substantially in accord with the facts above recited and concluded:

> 3. The Town has complied with all laws in connection with the increase of rates, but since the increase in rates was made necessary to finance new waste water treatment facilities and since the defendant was not a user of the new waste water facility during the time covered by the bill, he is not required to pay the sewer portion of the bill.

Plaintiff Town appealed and the Court of Appeals, speaking through Judge Wells with Judge Vaughn concurring and Judge Clark dissenting, reversed holding "that the trial court entered its judgment under a misapprehension of applicable law." *Town of Spring Hope v. Bissette*, 53 N.C. App. 210, 213, 280 S.E. 2d 490, 493 (1981). Defendant Bissette appealed as of right pursuant to G.S. 7A-30(2).

*Valentine, Adams & Lamar, by Stephen M. Valentine, for plaintiff-appellee.*

*Ben T. Bissette, defendant-appellant, pro se.*

BRANCH, Chief Justice.

The Town of Spring Hope was authorized to establish and revise rates for water and sewer services under the following statutory language:

> A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise. Schedules of rents, rates, fees, charges, and penalties may vary according to classes of service, and different schedules may be adopted for services provided outside the corporate limits of the city.

G.S. 160A-314(a). This rate-making function is a proprietary rather than a governmental one, limited only by statute or contractual

agreement. *Aviation, Inc. v. Airport Authority*, 288 N.C. 98, 215 S.E. 2d 552 (1975). *See also Sides v. Hospital*, 287 N.C. 14, 213 S.E. 2d 297 (1975); *Woodie v. North Wilkesboro*, 159 N.C. 353, 74 S.E. 924 (1912). Appellant does not allege any contractual limitations on the Town's authority to raise sewer rates, but argues that the rate increase in instant case exceeds the authority granted the Town under the above-quoted statute.

In its opinion below, the Court of Appeals noted:

> The great weight of authority is to the effect that in the setting of such rates and charges, a municipal body may include not only operating expenses and depreciation, but also capital cost associated with actual or anticipated growth or improvement of the facilities required for the furnishing of such services. *See generally* Annot., 61 A.L.R. 3d 1236 (1975); 12 McQuillin, Municipal Corporations, § 35.37c., at 488 (3d Ed. 1970); C. Rhyne, Municipal Law § 23-7, 500-501 (1957); 3 Yokley, Municipal Corporations § 503, at 214-19 (1958).

*Spring Hope v. Bissette*, 53 N.C. App. at 213, 280 S.E. 2d at 492-93. It is in light of this general authority that we proceed to consider whether our statute authorized the Town to charge an increased sewer rate based upon the expense of replacing an outmoded component of that system prior to the time the new component began operation.

Appellant argues that G.S. 160A-314(a) does not authorize the Town of Spring Hope to increase its charge for sewer services to reflect the cost of the new waste water treatment plant until such time as the new plant begins operation. Appellant relies on the language of the statute which speaks only of "services furnished" and does not specify that a municipality can charge for services "to be furnished." *Cf.* G.S. 162A-9. The dissent in the Court of Appeals adopts this position.

While we agree that under this statute a municipality may not charge for services "to be furnished," we fail to see how that proposition governs this case. Appellant was charged for sewer service, a service he received during the period for which he was billed and now refuses to pay. Construction of the new water treatment plant was not intended to, nor did it result in, providing a new or a higher level of service to the sewer system's

customers. When the new plant went into operation, the customers received nothing they had not theretofore received; thus, the increase in the rate did not reflect any services yet to be furnished, but merely the same service which had previously been furnished, *i.e.*, the efficient removal of waste water. The increase in the rate, far from being a charge for a new service not yet provided by the Town, represented the cost of a necessary improvement to the already existing sewer system without which the Town could not continue to provide sewer service.

The Town of Spring Hope acted well within its statutory authority when it increased water and sewer charges to pay for the new waste treatment facility. The Town was not required by the language of G.S. 160A-314(a) to wait until the plant began operations to institute such increases.

Neither were the increases unreasonable. Raising the rates was necessary to service the debt created by the bonds the Town issued to finance construction of the plant. Without the new facility the Town would not have been allowed to continue to discharge its waste into Hendricks Creek and, without this outlet for waste water, the Town would have been unable to continue to provide sewer service. Obviously the temporary permit was granted upon the Town's assurances that the treatment facilities were being upgraded. Without this temporary permit, the Town would not have been able to provide to appellant the full benefit of sewer service, which he admits he received.

The Town's action in raising the rates was of necessity, and we agree with the Court of Appeals that appellant has made "no showing of arbitrary action in the case now before us . . . ." *Town of Spring Hope v. Bissette*, 53 N.C. App. at 213, 280 S.E. 2d at 493.

The decision of the Court of Appeals is

Affirmed.

Justice MEYER concurring.

I concur in all aspects of the majority opinion and desire to respond to the dissent filed herein by Justice Exum. The dissent concludes that the Town of Spring Hope's rates were increased solely to pay for "maintaining" the new water treatment facility,

and because this maintenance service could not begin until the new plant *went on line*, it was this point in time that "marks the moment at which the town was actually 'furnishing' the service (maintenance) for which the increased water and sewer charges were being collected." Finding of Fact No. 5 is a finding that the water and sewer rates were increased to help pay for "the new water treatment facility." This cannot be interpreted as a finding that the increase was for "maintenance" only of the new facility. This finding is supported by the very testimony relied upon by the dissenter to show that the increase was due *solely* to "maintenance" of the new plant. The mayor's testimony is indeed uncontradicted as pointed out in the dissent. The testimony of the mayor in the record before us is more fully set out in pertinent part as follows:

> The minutes of the Town Board Meeting increasing the rates made no mention of the reason for the increase, but the increased rates were made necessary at least in part by the need *to finance the new water treatment plant*, both *its construction*, operation and maintenance. When the rate increase was voted in June, 1979, the new waste water treatment plant was nearly completed, but not then in operation. The new plant was put into operation in December, 1979.
>
> .   .   .   .
>
> It was apparent to all that *a substantial part of the cost of the new facility would have* [to] *be borne or paid by the Town and that this cost would come from increased water and sewer rates or the additional revenues would be produced by water and sewer rates* and in compliance with instructions we received from other governmental authorities as to how the Town would manage the extra expense, on May 21, 1974, the Town adopted a resolution concerning water and sewer rates setting out that the Town of Spring Hope proposed to improve and/or enlarge its *waste water treatment facilities* and that *the Town's share of the costs would be produced from water and sewer rates*. The Town resolved to adopt such necessary water and sewer rates as may be required to fund the operating and maintenance costs, capital reserve costs and *other applicable costs of its water and sewer systems*.

Town of Spring Hope v. Bissette

. . . .

Throughout preparation for and work on the improved facilities the Town officials were advised by state and federal agencies that the *Town's part of the cost of improvements could and should be financed by increased rates or charges to users of the Water-sewer system.*

R. pp. 4, 6-7, 8 (emphasis added).

This testimony makes it amply clear that the rate increase was for financing the construction as well as the operation and maintenance of the facility. I frankly fail to understand the dissenter's conclusion that the rate increase was imposed solely for "maintenance."

I hasten to point out however that even if I could agree with the dissenter that the rate increase was solely for maintenance of a new facility, I believe that such increase is authorized by our statute even though it becomes effective prior to the time the new facility comes on line.

Justices COPELAND, CARLTON, and MITCHELL join in this concurring opinion.

Justice EXUM dissenting.

Both the majority and I agree that G.S. 160A-314(a) authorizes a municipality to increase rates, not for services to be furnished, but only for services which are being furnished. I disagree with the majority's conclusion that this proposition does not govern disposition of the case.

It cannot be questioned that the town's increased sewer rates contested here were made necessary by the construction of a new sewage disposal plant designed to replace, not to expand, its old existing system. The uncontested findings of the trial judge were:

"3. Prior to July 1, 1979, it became necessary for the Plaintiff Town to improve and update its water and sewer system, particularly its waste water disposal facilities to meet federal and state guidelines and requirements and this necessitated a considerable outlay of capital.

4. Construction was commenced prior to July 1, 1979, on a new waste water treatment facility which was not completed and placed in operation until December, 1979.

5. *The plaintiff increased its water and sewer rates to help pay for the new water treatment facility.* The rates were increased effective July 1, 1979, and the defendant was sent a bill for $414.00 covering the period from June 25th through August 31, 1979." (Emphasis supplied.)

The majority argues that because the town would have been authorized to increase its water and sewer rates in any event notwithstanding the construction of a new plant, the limitation in G.S. 160A-314(a) has no application. Thus the majority, in effect, decides a case that is not before the Court. *This* increase in *this* case, everyone concedes, was due solely to anticipated new costs relative to the operation of the new plant. But for the new plant, there would have been no increase. The question for decision is therefore whether the increased charges were for services being furnished within the meaning of the statute.

The problem in the case stems from the ambiguity in the emphasized portions of Finding 5. If this finding means that the increased rates were used to finance construction of the new plant, as the Court of Appeals' majority thought, then I would have less difficulty agreeing with that court's majority that the increased rates were for services being furnished within the meaning of the statute as of 1 July 1979 when construction was under way. The question would be more difficult, though, than the one actually before us.

On oral argument defendant contended strongly that the increased charges were not for plant construction costs. They were instead for the purposes of maintaining the new plant and creating a capital reserve fund which would be sufficient to replace the plant when it became necessary to do so because of anticipated ordinary wear and tear. Plaintiff's counsel was less sure about this fact. Evidence in the record seems to support defendant's view of the facts. The town's mayor testified that in anticipation of constructing the new sewage disposal facility the town resolved to increase "its water and sewer rates as may be required to fund the operating and maintenance costs, capital reserve costs, and other applicable costs of its water and sewer

systems." The town also resolved to apply for state and federal grants to construct the facility and to finance itself whatever construction costs were not covered by the grants. According to the mayor, the new plant cost "approximately" $1,100,000 to build. The town received federal and state grants totaling $962,000. It then obtained authorization to issue sanitary sewer bonds and bond anticipation notes to a maximum of $250,000. As of the date of trial, 20 March 1980, the mayor testified that bond anticipation note proceeds had amounted to $137,500. It is true that at one point in his testimony the mayor mentioned "construction" as being one of the purposes for the increased rates. The figures he gave, however, seem to me to establish that the increased rates were actually for maintenance and a capital reserve fund.

Given this evidence, Finding 5 should be interpreted to mean that plaintiff increased its water and sewer rates to pay for *maintaining* "the new water treatment facility" and to provide a capital reserve fund for eventually replacing the plant. If Finding 5 is so interpreted, then I am satisfied the town had no statutory authority to increase its water and sewer rates until the new plant actually went into service in December 1979. The moment at which the plant went on line marks the moment at which the town was actually furnishing the services for which the increased water and sewer charges were being collected. For it is not until this moment that costs relating to maintaining the plant and creating a capital reserve fund for the plant's replacement due to normal wear and tear begin to be incurred.

For these reasons, I respectfully dissent and vote to reverse the decision of the Court of Appeals.