McNEILL v. HARNETT COUNTY

[97 N.C. App. 41 (1990)]

In summary, in the trial below, we find

No error.

Judges PHILLIPS and GREENE concur.

---

CELIA McNEILL, CHARLES L. McNEILL, OBIE L. McLEAN, EUNICE M. MATTHEWS, GENEVIEVE BRYANT, RONALD BRYANT, ETHEARL MORRIS, JOSEPH MORRIS, HENRY SMITH, GENETTE SMITH, ESTERBELLE McALISTER, LOIS MORRIS, AND DELLA RAY, PLAINTIFFS v. HARNETT COUNTY; THE HARNETT COUNTY BOARD OF COMMIS- SIONERS; BILL SHAW, LLOYD G. STEWART, RUDY COLLINS, MAYO SMITH, AND MACK REID HUDSON, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE HARNETT COUNTY BOARD OF COMMISSIONERS; THE BUIES CREEK-COATS WATER AND SEWER DISTRICT; AND THE NORTHEAST METROPOLITAN WATER DISTRICT, DEFENDANTS

No. 8811SC1198

(Filed 16 January 1990)

1. **Municipal Corporations § 24.1 (NCI3d) — new sewer system — assessments against benefited properties — statutory notice required**

   Where defendant county financed the building of a new sewer system by making special assessments against benefited properties, defendant was required to follow the notice procedures of N.C.G.S. § 153A, article 9; because defendant failed to comply with these procedures, its ordinance requiring connection to the sewer line is declared null and void as to these plaintiffs.

   **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 573.**

2. **Attorneys at Law § 7.5 (NCI3d) — violation of due process rights alleged — plaintiffs entitled to attorney fees**

   Plaintiffs were entitled to attorney fees in this action where they asserted a violation of their right to due process under 42 U.S.C. § 1983 through defendant county's having compelled them to make payments without an opportunity to be heard.

   **Am Jur 2d, Civil Rights § 16.**

McNEILL v. HARNETT COUNTY

[97 N.C. App. 41 (1990)]

APPEAL by plaintiffs, cross-appeal by defendants, from judgment and order entered 28 July 1988 in HARNETT County Superior Court by *Judge Wiley F. Bowen.* Heard in the Court of Appeals 18 April 1989.

*East Central Community Legal Services, by Leonard G. Green, and Jeffrey M. Seigle, for plaintiff-appellants, cross-appellees.*

*Woodall, Felmet & Phelps, P.A., by John M. Phelps, II, for defendant-appellees, cross-appellants.*

BECTON, Judge.

[1] Plaintiffs seek declaratory and injunctive relief, alleging that defendants failed to comply with statutory and constitutional provisions in seeking to require plaintiffs to connect their properties to a new sewer line. Essentially, we must decide whether a county has to comply with certain provisions of N.C. Gen. Stat. ch. 153A before it may levy certain charges to finance the construction of a sewage system. We hold that such compliance is required. Because we agree that the defendants failed to comply with statutorily-mandated procedures, we do not reach the constitutional questions presented by plaintiffs.

I

Plaintiffs are owners of residential real property located in rural Harnett County. At the time they purchased their land, no sewage disposal system serviced their area. Therefore, plaintiffs installed septic tanks on their property.

On 20 October 1980, defendant Harnett County Board of Commissioners resolved to create the Buies Creek-[Town of] Coats Water and Sewer District, a district which would encompass plaintiffs' properties. On 1 March 1982, the Board made application for approval of the issuance of $2,500,000.00 worth of bonds to construct an extension of an existing sewer system into the new District. The Board held a public hearing concerning the bonds on 15 March 1982; notice of the hearing, together with the bond order, was published in the *Dunn Daily Record* of 4 March. The bond order stated that a tax would be levied to pay the principal and interest on the bonds if they issued. At the meeting, the Board adopted the bond order and called for a special referendum. At this same meeting, the Board determined that the cost of the system would be financed in part by local funds. The Board set up a "connection

charge schedule" allowing for a mandatory connection fee of $1,200.00 to be charged district residents. (Because of a subsequent increase in grant funding, the Board, at a 5 April 1982 meeting, reduced the amount of the fee to $250.00 per property owner.)

On 30 April 1982, the County held a referendum to decide whether the sewer bonds should issue. The ballot in part asked, "Shall the order adopted March 15, 1982 authorizing not exceeding $2,500,000.00 Sanitary Sewer Bonds of the Buies Creek-Coats Water and Sewer District for the purpose of providing funds, with any other available funds, for constructing a sanitary sewer system for said District . . . and authorizing the levy of taxes in an amount sufficient to pay the principal of and the interest on said bonds, be approved?" The voters approved the bond issuance.

On 21 June 1982, the Board, anticipating the local share of the construction costs to be $250,000.00, met and adopted a resolution calling for the monies to be raised "by user fees to be paid in advance of the construction." The Board resolved that the District would have authority to levy special assessments against benefited property within the District sufficient to finance all or part of the system. The resolution stated that a "tap fee" should be established "in such a manner as to give the district users an incentive to pay [the] anticipated assessments in advance . . . ." This incentive took the form of a waiver of the fee if a potential user would pay an "anticipated assessment sum" of $250.00 by 1 December 1982. If a user did not pay the assessment sum, the tap fee charged would increase each month to a maximum additional amount of $250.00, or $500.00 total. By 7 February 1983, the District had received more than $225,000.00 in advance payments.

On 6 August 1984, the Board adopted an ordinance requiring owners of all improved property in the County to connect their premises to the sewer system. The ordinance further stated that residents who refused to connect to the system would nonetheless be liable for a flat rate of $18.00 per month in sewer charges. The Board further authorized a "tap on" or "connection fee" of $500.00. On 7 January 1985, the Board authorized the County utility department to terminate the water service of any customer who had not paid a sewer bill.

Plaintiffs have not connected their residences to the sewer lines. Plaintiffs Ethearl Morris, Joseph Morris, and Lois Morris have paid a portion of the connection fee; the remaining plaintiffs

have not paid the fee. In May 1985, water service to plaintiffs Celia McNeill and Charles L. McNeill was terminated for their refusal to pay charges due. Their service was subsequently restored upon their payment of these charges.

Plaintiffs instituted this action against defendants and prayed that the court declare the County's charges to be null and void. Defendant Harnett County counterclaimed, seeking orders to compel plaintiffs to connect their properties to the sewer lines, to compel payment of the connection fee, and to recover unpaid sewer charges. The parties filed cross-motions for summary judgment. The trial judge allowed partial summary judgment to plaintiffs, prohibiting the County from compelling payment of the connection fee. Summary judgment was entered for defendants on all other counts. Both parties appealed.

## II

Plaintiffs contend that the mandatory connection order is unenforceable in that the County failed to provide them with the required statutory notice and public hearing and that the order violates their rights to due process under the State and federal constitutions. Plaintiffs have not contested, and we accept, the County's assertion that it entered into a valid interlocal cooperative agreement to operate the sewer system. N.C. Gen. Stat. Sec. 153A-284 (1987) empowers a county to require the owner of improved property to connect to a sewer line and to fix charges for the connection. N.C. Gen. Stat. Sec. 162A-88 (1987) provides that a county water and sewer district "may establish, revise and collect rates, fees or charges and penalties for the use of or the services furnished or to be furnished by any sanitary sewer system . . . ."

A water and sewer district has the authority to make special assessments "against a benefited property within the district for all or part of the costs of . . . [c]onstructing . . . sewage disposal systems." N.C. Gen. Stat. Sec. 162A-92(2) (1987). The statute directs, however, that the district exercise its authority to levy such assessments according to the provisions of chapter 153A, article 9. Pursuant to that article, when the cost of all or part of a project is to be financed through special assessments, a board of commissioners must adopt a preliminary assessment resolution. N.C. Gen. Stat. Sec. 153A-190 (1987). A copy of that resolution must be sent by first-class mail to each owner of property subject to the assessment. N.C. Gen. Stat. Sec. 153A-191 (1987). The board must publish

## McNEILL v. HARNETT COUNTY

notice of a public hearing to be held on the question of the resolution, *id.*, and afford all interested persons an opportunity to be heard on the matter. N.C. Gen. Stat. Sec. 153A-192 (1987).

At the heart of the dispute between these parties is the question whether the County made "an assessment" against the residents of the District. The County contends it never adopted a preliminary assessment resolution because the $225,000.00 it received in "anticipated assessments" obviated the need to make actual assessments. Further, it contends that its mandatory connection charge and monthly service charge were not assessments but were fees for "services to be furnished" under Section 162A-88; it contends that charges made pursuant to that statute do not require compliance with the provisions of chapter 153A. Plaintiffs, on the other hand, argue that the County's monthly sewer charges generated from the mandatory connection order are being used to repay the principal on the sewer bonds — to finance the cost of the construction of the sewer line, in other words — making applicable chapter 153A's requirements. Plaintiffs contend the County's connection fees, in addition, "are merely assessments masquerading under a new name."

A special assessment is a compulsory charge placed upon real property within a predetermined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement within the district. 14 McQuillin, Municipal Corporations, Sec. 38.01 (3d ed., Cum. Supp. 1988). The improvement must confer a benefit on property distinguishable from the benefit enjoyed by the surrounding area. *Id.* "The underlying theory upon which a valid assessment is based is that a local improvement has been made by a municipality, and that the property of all abutting owners derives a benefit therefrom, for which they should be compelled to pay." *Atlantic Coast Line R.R. Co. v. Town of Ahoskie*, 192 N.C. 258, 260, 134 S.E. 653, 654 (1926).

The County contends that no assessment was made in this case because the mere presence of the sewer line is a benefit to both the improved and unimproved property in the District. *See Amherst Builders Ass'n v. City of Amherst*, 61 Ohio St. 2d 345, 347, 402 N.E.2d 1181, 1183 (1980); *but see Robinson v. Richland County Council*, 293 S.C. 27, 32, 358 S.E.2d 392, 395-96 (1987) (increase in property values in adjoining area because of new sewer lines not sufficient to bring adjacent landowner within class who "benefit" from project). Because it charged fees to only those prop-

erty owners who used the system, and not to all owners of property within the District, the County argues that it made no assessments. The County also seeks to differentiate its charges from assessments by noting those statutes in which the making of an assessment creates a lien on the assessed property. *See* N.C. Gen. Stat. Secs. 153A-195 and 153A-200 (1987). The County contends that no liens against plaintiffs' properties were created by the fees it charged.

Even if the charges levied in this case are not assessments in the technical sense, we do not view them as the types of charges contemplated by Section 162A. The County cannot, for example, on the one hand argue that the connection fee is not an assessment because it is only charged to users of the system when, on the other hand, it seeks to compel all owners of improved property to become users. And although the connection fees do not themselves become liens on plaintiffs' properties, the County would have obtained judgment liens had the trial judge upheld the validity of the connection charges. We find probative, moreover, the County's use of the term "anticipated assessments" to describe the $250.00 it solicited from each owner of improved property in the District. This anticipated assessment, if not paid, then became a mandatory connection charge consisting of that $250.00 plus an additional amount up to $250.00. The record demonstrates that the anticipated assessments, the connection fees, and the monthly service charge were directed, to varying extents, to the financing of the sewer project. We hold these charges to be the functional equivalent of a special assessment and not as charges for services under Section 162A-88. Therefore, notice and an opportunity to be heard on the County's plan to finance construction of the system should have been afforded plaintiffs. Notice of the actual financing plan was especially necessary in this case as the published bond order had stated that a tax would be levied to pay the principal on the sewer bonds.

The County argues that the setting of rates and charges may reflect costs associated with financing the construction of a system. In *Town of Spring Hope v. Bissette*, this Court said that

> [t]he great weight of authority is to the effect that in the setting of such rates and charges, a municipal body may include not only operating expenses and depreciation, but also capital cost associated with actual or anticipated growth or improvement of the facilities required for the furnishing of such services.

McNEILL v. HARNETT COUNTY

[97 N.C. App. 41 (1990)]

53 N.C. App. 210, 213, 280 S.E.2d 490, 492 (1981), *aff'd,* 305 N.C. 248, 287 S.E.2d 851 (1982) (citations omitted). *Bissette,* however, involved a dispute over the payment for services already received. Our Supreme Court said that

> [c]onstruction of the new water treatment plant was not intended to, nor did it result in, providing a new or a higher level of service to the sewer system's customers. When the new plant went into operation, the customers received nothing they had not theretofore received; thus, the increase in the rate did not reflect any services yet to be furnished, but merely the same service which had previously been furnished, *i.e.,* the efficient removal of waste water. The increase in the rate, far from being a charge for a new service not yet provided by the Town, represented the cost of a necessary improvement to the already existing sewer system without which the Town could not continue to provide sewer service.

305 N.C. at 251-52, 287 S.E.2d at 853. *Bissette* is distinguishable from this case in that the County here is using its charges to pay for the construction of a new project. The statutes prescribe more exacting procedures when assessments or their equivalent are used for this purpose than is required when charges associated with the operation of an existing system are levied.

Plaintiffs have urged us to hold that N.C. Gen. Stat. Sec. 153A-276 (1987) requires that notice by first-class mail be given whenever a mandatory connection order is issued under Section 153A-284. Section 153A-276 provides that "[s]ubject to the restrictions, limitations, procedures, and regulations *otherwise provided by law,* a county may finance the cost of a public enterprise by levying taxes, [etc.]" (Emphasis added.) Plaintiffs read the "otherwise provided by law" provision to mean that individual notice and a public hearing are required whenever landowners are required to connect to a sewage system. We do not believe our decision in this case requires a holding of that breadth. It may not be the case that every mandatory connection order is void for lack of notice. Our decision in this case hinges on the method of financing adopted by the County, a plan which effectively involved the making of special assessments for the financing of the new sewer line.

We are unwilling to sanction a plan that would allow a county to circumvent the statutory scheme for the financing of public

projects. We therefore hold the County's ordinance requiring connection to the sewer lines to be null and void as regards these plaintiffs, and that portion of the judgment mandating connection and payment of service charges is hereby vacated.

### III

[2] Plaintiffs argue that they are entitled to attorney fees in this case. In their Complaint, plaintiffs sought, among other things, a declaratory judgment and asserted a claim under 42 U.S.C. Sec. 1983. As we have decided this case under the statutory law of our State, the test for determining whether plaintiffs, as the prevailing party, are entitled to fees is whether 1) there is a substantial claim under Section 1983 and 2) there is a common nucleus of operative facts between the Section 1983 claim and the State law claim. *Ward Lumber Co. v. Brooks*, 50 N.C. App. 294, 296-97, 273 S.E.2d 331, 333, *appeal dismissed*, 302 N.C. 398, 279 S.E.2d 356, *cert. denied*, 454 U.S. 1097, 70 L.Ed. 2d 638 (1981); *see also* H.R.Rep. No. 1558, 94th Cong. 2d Sess. 4, n.7 (1976). Both prongs of the test are met here.

Plaintiffs' claim under Section 1983 is substantial. They assert a violation of their right to due process through the County's having compelled them to make payments without an opportunity to be heard. The facts upon which we have decided their statutory claim, in addition, are the same facts upon which their Section 1983 claim is based. We hold that plaintiffs are entitled to fees in this action and remand for a determination as to amount.

### IV

That portion of the judgment requiring plaintiffs to connect their properties to defendants' sewer system is reversed; that portion requiring plaintiffs to pay sewer charges is reversed and remanded with instructions that any sums heretofore paid by plaintiffs be reimbursed them with interest; that portion of the judgment relieving plaintiffs of liability for the mandatory connection fee is affirmed. Plaintiffs' motion for attorney fees for the time expended on this appeal is granted; the case is remanded for a determination as to the amount of attorney fees to which plaintiffs are entitled.

Affirmed in part, reversed and remanded in part.

Judges JOHNSON and ORR concur.